Story, J.
(dissenting.) — The decree which has just been pronounced by a majority of the court is decisive of the case of The Mars, which is now pending in this court, and my decision therein must be reversed. The opinion which I there held, and the reasons which support it, are disclosed on the record, and though the discussion in this court has not increased my confidence in that opinion ; nevertheless, as I am not yet satisfied of its incorrectness, and two *of my brethern concur in it, I shall make no apology for introducing it in this place. It is as follows : *-
“ The present information proceeds for á forfeiture of the brig Mars, upon the allegation that the brig departed from the United States bound to a permitted port, without giving bond pursuant to the act of the 1st of March 1809, ch. 91, § 16. There are other counts in the information which I need not now consider, because it is admitted, there was a forfeiture under the first count, and the answer of the present claimant sets up, as a justification of his title, that he is a bond fide purchaser, for a valuable consideration, and without notice of the offence ; and it is admitted, that this justification is true in point of fact; and that there have been no laches either as to the United States, or as to the purchaser.
“ The question presented to the court is, whether property, which has become forfeited to the United States, and afterwards, and before seizure, while remaining in the possession of the vendor, is sold to a bond fide purchaser, for a valuable consideration, without notice, is protected against the claim of the United States ?
“ This question is peculiarly delicate and interesting, in whatever way it is considered. On the one hand, it strikes at the root of almost all the forfeitures in rem which the legislature has provided to guard the revenue laws from abuse ; and if the decision be against the United States, it may open a wide field for fraud and colorable transfers, to the encouragement of offenders. On the other hand, if the secret taint of forfeiture be indissolubly attached to the property, so that at any time, and under any circumstances, within the limitations of law, the United States may enforce their rights against innocent purchasers, it is easy to foresee, that great embarrassments will arise to the commercial interests of the. country; and no *257 man, whatever may be Ms caution or diligence, can guard himself from injury and, perhaps, ruin. Considerations of this nature have pressed heavily upon my mind, and I have, therefore, been solicitous to avoid a discussion involving so much public as well as private importance. I could have *4.o'7l wished to have reserved *this question for the consideration of all •* the judges in the highest tribunal, that in forming my opinion I might have had the light reflected from their minds, and the benefit of their acknowledged learning. The parties have, however, seen fit to pursue another course, and I shall meet the question as my duty requires, without asking for shelter under any authority ; though not without extreme diffi-’ dence.
“ Before I proceed to the principle question, it will be necessary to clear the way, by adverting to some considerations which have grown out of the argument on each side. It should be remembered, that this is not a case where the vendor was out of possession, and, of course, where the law might infer a want of due diligence in the purchaser. To such a case, the maxim caveat emptor would certainly apply. Nor is the present a case where the sale was made at the first moment when the property came within the jurisdiction or grasp of the United States ; for I should have little doubt that such a hurried sale could hardly be the foundation of a solid title. It is not a case of voluntary gift or collusive transfer, which would probably share the fate of all bounties in fraud or exclusion of public rights. Jones v. Ashurst, Skin. 357.
“ It is admitted, that the sale is bond fide, for a valuable consideration, and without any express or implied notice. Further, the statute, on which the information is founded, has declared, that the property shall be wholly forfeited, if the offence be committed ; but it has not declared, at what time • it shall take effect, to what time it shall relate, nor whether it shall be incapable of being purged by subsequent events. iTho forfeitures under the statute are to be distributed in the same manner as forfeitures under the collection act of 2d March 1799, § 91, by which informers and officers of the customs, as well as the government, may acquire vested interests ; and it follows, therefore, that these interests, as to informers and officers of the customs, cannot vest, until their rights are ascertained by seizure or condemnation.
“ It has been argued on the part of the United States, that the forfeiture is, by the statute, made absolute, on the commission of the offence, and as it was competent for the legislature to enact such a law, the title cannot be divested *by any subsequent event. That the cases of forfeiture at the common law are not applicable, because they depend upon the qualification annexed to them by the common law, which makes them conditional only, and not absolute forfeitures, whereas, the present statute has annexed no qualification : and in support of this distinction, the opinion of the Chief Justice in the case of the United States v. Grundy, 3 Or. 337, has been quoted, where he says (p. 350), £It has been proved that in all forfeitures accruing at common law, nothing vests in the government,-until some legal step shall be taken for the assertion of its right; after which, for many purposes, the doctrine of relation carries back the title to the commission of the offence, but the distinction, taken by the counsel for the United States, between forfeitures at common law and those accruing under a statute, is *408] *258 certainly a sound one. Where a forfeiture is given by a statute, the rules of the common laAV may be dispensed with, and the thing forfeited may either vest immediately, or on the performance of some particular act, as shall be the will of the legislature. This must depend upon the construction of the statute.’
“I entirely subscribe to the doctrine here stated by the Chief Justice. There can be no doubt, that the legislature may provide that its forfeitures shall take effect differently from the course prescribed by the common law ; but the question will always be: Have the legislature so done ? If they have not, shall the rules of the common law govern, in the absence of any positive declaration ? It should be remembered also, that the Chief Justice is here speaking in a case where the main question before him rested in a considerable degree upon the point whether the legislature had not given an election of remedy, and suspended the vesting of any interest until the determination of that election. But I apprehend, that the words of the Chief Justice by no means imply that when a forfeiture in rem is attached to a statute offence, the rules of the common law are, of course, excluded. They do not, in my judgment, import more than the opinion which I have already expressed. Now, in the case at bar, I cannot perceive in the language of the legislature any systematic exclusion of the common law as to forfeitures. They have declared no more than that the ^commission of an act r*4f)q shall induce a forfeiture : and so has the common law ; but the ques- - tion as to the nature and extent of the operation of this forfeiture is nowhere, that I can perceive, touched. This view of the subject leads me to deny another position assumed by the counsel for the United States, viz., that the doctrine of relation has nothing to do with the present controversy. In the progress of this examination, I think, if not already shown, it will sufficiently appear, that the doctrine of relation has a very powerful influence in every essential view of the subject.
“ I will now consider the main question, which, perhaps, may be divided into two branches. 1. What is the interest or right which attaches to the government in forfeitures of property, before any act done to vindicate its claims? 2. What is the operation of such act done to vindicate its claims — as to the offenders, and as to strangers ?
“ 1. As to the first point. In all cases at common law, where lands are forfeited for the personal offence of the party, I take the rule to be universally true, that until the offence is ascertained, by conviction and attainder, no title vests in the sovereign. Before that time, the party is entitled to the possession and profits of his lands, and the'government have no vested right in them, either to enter or dispose of the estate. 2 Inst. 48 ; Staundf. P. C. 192. Nay, even after attainder, until office found, the sovereign is considered as having but a possession in law, and an office is necessary to complete a title. Staundf. P. C. 198. The offender, therefore, has, until conviction, full power and authority to alien his lands, and to convey to the purchaser a complete and legal, though defeasible seisin; and unless such conviction follow the offence, the alienation is good against all the world. For, as Bracton says (lib. 2, ch. 18, p. 80), ‘ea vero, queepost feloniam facta sunt, semper valent et tenent nisi fuerit condemnatio subsecuta, et si fuerit subsecuta, non valent. If this be true, and there seems no reason to doubt r*410 it, *it follows, that the estate of the offender is rightful, that he has *- *259 bothyws ad rein, and jus in re: and consequently, that the Crown hath but a mere possibility which in no wise restrains the exercise of ownership over the property. See 4 Bl. Com. 382.
“ The same doctrine is also, in general, true, as to like forfeitures of goods and chattels. Bract, lib. 2, ch. 13 ; Co. Litt. 391 a; Staundf. P. C. 193 ; Ibid. 52 ; 2 Inst. 48 ; 2 Hawk. P. C. ch. 49. Nor do the cases of deodand and suicide form any exceptions, for the authorities all concur, that the forfeiture does not vest a property, until the fact is found of record. Foxleifs Case, 5 Co. 109 ; Hales v. Petit, Plowd. 200, 262. It has been supposed, that goods waived vested ipso faoto in the crown, upon waiver ; but on a careful examination of the authorities, it will be found, that the owner retains his full property, until an absolute seizure b)r the crown. Staundf. Prerog. lib. 3, ch. 25, p. 186 ; Fitz. Abr. Estray 2 ; 21 Edw. IV. 16. For all purposes of alienation and sale, therefore, the property in goods and chattels remains in the owner, notwithstanding the commission of an offence subjecting it to forfeiture ; and consequently, he may convey a good title against every person but the crown, and against the crown also, unless in cases where the anterior relation applies. Jones v. Ashurst, Skin. 357. I think, therefore, it may be assumed as a settled principle, that in forfeitures for personal offences, before seizure or prosecution, the sovereign has no vested title.
“ Can the case be distinguished, where the forfeiture is made to attach to the instrument itself, by means whereof the offence is committed ? It seems to me, that the most favorable cases for the United States, viz., deodands and waifs, conclusively show that no such distinction anciently prevailed, for whatever may be the effect of relation, it is certain, that no property vested in the crown, until seizure or inquisition. I infer, therefore, that no absolute property vested in the United States, in the case at bar, until actual seizure was made, and the decision in the king’s bench in Lock-year v. Offley, 1 T. R. 252, seems to me fully to support the inference. It has, indeed, been supposed by the counsel for the United States, that Roberts v. Withered, 1 Salk. 223, *12 Mod. 92 ; and Wilkins v. Despard, *411] 5 T. R. 112, support a contrary doctrine. But on examination, they appear to' me to confirm it. In the first, the action, was detinue, for property forfeited under the navigation act of Charles II., and the court held, that the action well lay, because the bringing action amounted to a seizure. In the latter case, there had been an actual seizure made for the forfeiture, and the sole question ivas, if condemnation were not necessary to divest the property of the owner.
“ If I am right in the view which I have already taken of the subject, there can be little doubt, that the title of the United States, so far as affects third persons, rests mainly on the doctrine of relation ; and that the counsel for the United States must call in the aid of the common law to enforce the present claim. For if no title vests until seizure, there must, at the time of seizure, be a title in the offending party, capable of being divested and of vesting in the United States. But at the time of the present seizure, that title had been transferred to the present claimant, and nothing was left in the vendor capable of transfer.
“ 2. This leads me to the examination of the second point, viz : What is the operation of the acts done by the sovereign to vindicate his title by for *260 feiture? At common law, in ease of attainder for treason or felony, the forfeiture of lands relates back to the time of the offence committed, so as to avoid all intermediate changes and conveyances (4 Bl. Com. 481, 487 ; Co. Litt. 390 b j Staundf. P. C. 192); but in general, in like cases, the forfeiture of goods and chattels relates back only to the time of conviction, so that all previous changes and alienations, and even bond fide gifts, are protected. 4 Bl. Com. 387 ; Co. Litt. 391 ; Staundf. P. C. 192 ; Perk. § 29 ; Skin. 357. There are some cases in which the relation is carried back to the time of the inquisition made ; but unless that of suicide form an exception, there is no case where the relation is pressed beyond the time of the prosecution. According to the decision in Plowden 260, a felo de se forfeits all his goods and chattels, from the time of committing the act which occasions the death : an»d the doctrine seems to be supported by Rex v. Ward, 1 Lev. 8. The general ground assigned for it, is, that Otherwise the offender would r¡¡¡ go unpunished, and it is compared to the case of flight after felony. Now, admitting that this is a solid reason, and a sufficient foundation for a legal adjudication, it may well be doubted, if the doctrine, or the decision in Plowden, required the forfeiture to relate back further than the death of the party.
“The case was that Sir James Hales, the offender was joint-tenant with his wife of a term of years ; and the question made was, whether, after inquisition, the forfeiture should not relate back, so as to overreach the right of survivorship which accrued to the wife. Now, one of the judges (Weston) held, that the forfeiture should only have relation to the death, at which time the title of the wife accrued ; yet in this concourse of titles, the king’s title by prerogative should be preferred (Plowd. 264); and I find that Lord Hale (1 Hale P. C. 414) expresses great doubt, whether, for all purposes, the relation could be carried back to fhe stroke which occasioned the death. Be this case as it may, it is the only exception to the general doctrine ; and inter apices juris, a case so unjust as that which robbed an unfortunate woman, not only of the moiety which vested in her by survivor-ship from her husband, but of the other moiety absolutely vested in her by grant, I am glad to find is a judicial anomaly.
“I have said, that the case of a felo de se forms the only exception to the general rule. There are authorities to show, that in case of flight for felony, the forfeiture, after it is found by inquisition, verdict or indictment, relates back to the time of the flight, so as to avoid all mesne acts. Rex v. Wendman, Cro. Jac. 82. But I think the better opinion, notwithstanding, is, that it relates only to the time of finding the flight. Co. Litt. 390. Staundf. P. C. 192 ; 5 Co. 109 b ; Bro. Forfeiture des terres, 119 ; Ibid. ¡Relation 31. But it has been argued, that admitting the rule, that the forfeiture of goods and chattels, in general, relates back to the time of conviction, yet it is inapplicable to a case, where a specific thing is declared forfeited by law, for in such case the corpus delicti attaches to the thing in whose hands soever it may come ; and the case of deodand, put by counsel, in Plowden 262, is cited in-illustration. ‘If my horse strike a man, *and afterwards I sell my horse, and after that the man dies, the horse shall be for- *• feited.’ I do not find any authority to support this position, although it is cited as law in 1 Hawk. P. C. ch. 26, § 7, and in Terms de la Ley, Deodand. It seems a peculiar case, growing out of the avarice of the church, and the *261 superstitition of the laity, in ancient times. The distinction seems also countenanced by the court in Lockyer v. Offley, 1 T. R. 252. The counsel for the plaintiff there argued, that the ship was forfeited, the moment the smuggling was committed, even though she had afterwards come into the hands of a bond fide purchaser ; and Mr. Justice Willes, in delivering the opinion of the court, in alluding to the argument, that the forfeiture attached the moment the act was done, said, ‘ it may be so as to some purposes, as to prevent intermediate alienations and incumbrances.’ To be sure, this expression carries with it a pretty strong implication ; but in the same case, returning to the argument, the same learned judge says, ‘I do not know, that it has been ever so decided — it may depend upon circumstances, such as length of possession, laehes in seizing, or other matters.’ And the decision of the court went ultimately upon other grounds. I must, therefore, consider the authority as not fairly extending to this point, and indeed, as rather leaning the other way. On the other hand, the case of lord and villein has been cited from Co. Litt. 118, § 117, to show that even where a right to seize property exists in the lord, it is not perfected by seizure, so as to overreach prior alienations; for until seizure, it is said, that he has neither jus in re, nor jus ad rein, but a mere possibility. And the conclusion drawn from this example is not materially affected by the consideration that a contrary doctrine prevails in the case of the sovereign (Ibid. § 118), because the reason assigned is perfectly consistent with it ; viz., that the property is in the sovereign, before any seizure or office. I do not think much reliance can be placed upon analogies borrowed from the feudal tenures, because they were governed by peculiar and technical niceties, the reasons of which have long since ceased, and perhaps cannot now be well understood. But if the principle of the case put be, that where the absolute property is not vested, before the alienation, a subsequent seizure will not avoid such alienation, if made bond fide, it is directly applicable to the case at bar.
*“ I have already endeavored to show that the absolute property did not vest in the United States until seizure ; and I think it would be a bold assertion, that the United States could, before such seizure, have conveyed the property to a purchaser, or have clothed it with a national character. I consider a passage in Lord Hale’s treatise on the customs as corroborating the view which I have already taken of this case ; he says, £ Though a title of forfeiture be given by the lading or unlading, the custom not being paid, yet the king’s title is not complete, till he hath judgment of record, to ascertain his title, for otherwise there would be endless suits and vexations , for it may bo ten or twenty years hence, that there might be a pretence of forfeiture now incurred.’ Harg. Law Tracts 226. According to Lord Hale, even seizure would not be sufficient to fix the title in the king ; but it must be consummated by a judgment of record.
££ But the point of difficulty is, to decide whether the United States had not such an inchoate title as, connected with a subsequent seizure, would, by a retroactive effect, defeat the intermediate purchase. Now, it is precisely in this view, that the case of villein may admit an unfavorable distinction ; for until seizure, the lord has not even an inchoate title, but a mere possibility. And though the property is, in the like, case of the sovereign, said to be in him, without seizure or office, yet, I apprehend, the title. *262 is not consummate, until seizure or office ; for until that time, it could hardly be held, that a purchaser under the villein, or even the villein himself, had a tortious possession and use of the property. The case of villenage, then, even supposing it to apply, does not go quatuor pecUbus with the present.
“The case of Attorney-General v. Freeman, Hardr. 101, has also been relied on by the claimant. In that case, the party, after outlawry and before inquisition, made a bona fide lease of his lands ; and it was held, that the forfeiture did not overreach the title of the purchaser. But I do not think that much reliance can be placed on this case, because it turned on a settled distinction, that until inquisition, the king has no title in the real chattels or freeholds of the outlaiv ; but in personal chattels, the title is in the king, without inquisition. *1 Ld. Raym. 305 ; 1 Salk. 395 ; 12 Mod. 176. And the relation does not extend beyond the time of the [*415 commencement of the title. The case of The Anthony Mangin, 3 Cr. 356 n., before Mr. Justice Winchester, is the only other .authority that I recollect, which has been thought materially to bear upon the question. I entertain the most entire respect for the opinions of that truly able and learned judge : and although the decision of that case did not rest upon the present question, it is but justice to acknowledge, that it has thrown great light on the subject, and enabled us all to meet the stress of this cause with more certainty than could otherwise have been done. It was very clearly the opinion of the learned judge, that a seizure did not relate back to the time of forfeiture, so as to overreach an intermediate bond fide conveyance ; and he has certainly offered cogent reasons in support of that opinion. But after a diligent examination of the authorities cited by him, I am well satisfied, that the point has never been solemnly adjudged, and must now be decided upon principle.
“ It seems to be a rule, founded on common sense, as well as strict justice, that fictions of law shall not be permitted to work any wrong, but shall be used ut resmagis valeat quam pereat, 3 Co. 28 b; and this rule, so equitable in itself, seems recognised in the common law. 18 Co; 24 ; 2 Vent. 200. And in respect to the doctrine of relation, this rule has been admitted in its fullest extent in civil cases. Bro. Relation, 18 ; 1 Hen. VII. 11; Bro. Debt, 139 ; 6 Co. 16 b; 3 Ibid. 28 b. For it has been repeatedly adjudged, that relations shall never work an injury, ‘ and shall never be strained to the prejudice of a third person, who is not a privy or a party to the act and further, that ‘ in destruction of a lawful estate vested, the law will never make any fiction.’ 3 Co. 29 ; 2 Vent. 200.
“ It is true, as we have already seen, that a different rule prevails v to forfeitures of lands, in treason and felony, founded probably on feudal principles, or the barbaric character of the times; yet even as to cases of • ..'oson and felony, a striking distinction is admitted in favor of goods and cha-Exc ; and mesne acts, before conviction orfinquisition, are suffered to retain their actual validity.
*“ Looking to the vast extent of commercial transfers, the favor with which navigation and trade are fostered in modern times, and L the extreme difficulty of ascertaining latent defects of title, it seems difficult to resist the impression, that the present is a case which requires the application of the milder rule of the law. If the principle contended for by the government be admitted in its full extent, it will be found very difficult to *263 bound it. A bale of goods which is once contaminated with a forfeiture, will retain its noxious quality through every successive transfer, even until it has assumed under the hands of the artizan its ultimate application to domestic use : yet such a position would strike us all as monstrous. If we say, that the forfeiture shall cease with the change of the identity of the whole package, as such, still an intrinsic difficulty remains. The object of the government would be completely evaded by the offender, and the innocent purchaser would sink under the pressure of frauds which he could never know, nor by diligence avert.
“ On the whole, I have come to the result, not however without much diffidence of my own opinion, that a forfeiture attached to a thing, conveys no property to the government in the thing, until seizure made or suit brought. That previous to that time, the owner has the exclusive right of possession and property, though the government may be considered as having an inchoate title, or possibility. That against the offender or his representatives, upon seizure or suit, the title, by operation of law, relates back to the time of the offence, so as to avoid all mesne acts ; but as to a bond fide purchaser, for valuable consideration, and without notice of the offence, the doctrine of relation does not apply so as to divest his legitimate title.
“ Considering, as I do, that this question is of very great importance, I trust, that it will receive the decision of the highest tribunal ; and I shall not feel humbled, if upon better examination a different doctrine shall prevail by the judgment of that court. I do, therefore, adjudge and decree, that the decree of the district court in the premises be affirmed.”
Decree reversed.